**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CURTIS BURNS,**

       **Plaintiff,**                           **CIVIL ACTION NO. 04-CV-40212-FL**

vs.

                                     **DISTRICT JUDGE PAUL V. GADOLA**

**COMMISSIONER OF**
**SOCIAL SECURITY,**                     **MAGISTRATE JUDGE MONA K. MAJZOUB**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

       This Court recommends that Defendant's Motion for Summary Judgment be **GRANTED** and Plaintiff's Motion for Summary Judgment be **DENIED**. The decision of the Commissioner is not supported by substantial evidence on the record.

**PROCEDURAL HISTORY**

       This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. The issue for review is whether the Commissioner's decision is supported by substantial evidence on the record.

       Plaintiff Curtis Burns filed an application for Disability Insurance Benefits (DIB) with Defendant on February 6, 2001. (Tr. 54). Plaintiff alleged he had been disabled since May 16, 1999. *Id.* Plaintiff meets the special insured requirements for disability through December 31, 2005. (Tr. 17). Defendant initially denied Plaintiff's application. (Tr. 42). Plaintiff appealed and received a hearing before Administrative Law Judge (ALJ) Alfred H. Varga. (Tr. 533). On June 19, 2002, the ALJ denied Plaintiff's appeal in a written decision. (Tr. 430-439). Plaintiff appealed the ALJ's

decision to the Appeals Council, which vacated the ALJ's initial decision and remanded Plaintiff's case for redetermination. (Tr. 447-449). Plaintiff had a second hearing before ALJ Varga on November 10, 2003. (Tr. 563). The ALJ again denied Plaintiff's claim, finding that Plaintiff was not disabled because he retained the functional capacity to perform a significant number of jobs in the economy. (Tr. 17). Plaintiff again sought review by the Appeals Council. The Appeals Council denied review on July 19, 2004, making the ALJ's decision the final decision of the Commissioner. (Tr. 7-10); 20 C.F.R. § 404.981.

## MEDICAL HISTORY

Plaintiff has complained of back pain since a fall in early 1999. A May 26, 1999 MRI of Plaintiff's lumbar spine revealed central and left eccentric protrusions at L4-5 and L5-S, with mild neural effacement at L4-5. (Tr. 95). On April 30, 2000, Plaintiff consulted with John H. Traylor, M.D. for his back pain. (Tr. 168). Dr. Traylor examined Plaintiff and reviewed MRIs of Plaintiff's lumbar spine. *Id.* Dr. Taylor concluded that Plaintiff had lumbar radiculopathy due to degenerative disc disease. (Tr. 169). He started Plaintiff on a series of lumbar epidural steroid injections. *Id.* An MRI of Plaintiff's lumbar spine taken on June 8, 2000 showed broad disc protrusions at L4-5 and L5-S1. The L4-5 protrusion abutted the L5 nerve root, and the L5-S1 protrusion was causing left neural foraminal enchroachment, and nearly abutted the S1 nerve root. (Tr. 267).

On February 29, 2000 Plaintiff consulted with Jerome V. Ciullo, M.D. concerning persistent pain in his right shoulder. (Tr. 148). Dr. Ciullo concluded that Plaintiff had a possible internal derangement of the shoulder, and probably either a biceps tendon detachment or a hole in the rotator cuff. *Id.* Dr. Ciullo recommended physical therapy, medication, and possible surgery if the problem persisted. (Tr. 149). Plaintiff underwent surgery to repair his shoulder on June 2, 2000. (Tr. 266).

The procedure included debridement of superior/anterior labral tear, resection of subdeltoid adhesions, inferior acromioplasty, and inferior clavicular spur resection. (Tr. 171).

On January 9, 2001, Plaintiff consulted with Jacquelyn D. Lockhart, M.D. (Tr. 197). At that time, Plaintiff reported improvement following physical therapy for his lower back, and improvement in his shoulder post-surgery. *Id.* Plaintiff continued to demonstrate clinical signs of lumbar radiculopathy, and had begun to complain of numbness and tingling in his hands. *Id.* Plaintiff reported that he had been offered a job in Lansing, Michigan, that would require extensive driving on a daily basis. *Id.* Dr. Lockhart opined that it would be inadvisable for Plaintiff to take the job in light of the severity of his lumbar problems and probable lumbar strain from extensive driving. *Id.*

On February 16, 2001, Elizabeth W. Edmond, M.D. examined Plaintiff on behalf of the Michigan Family Independence Agency. (Tr. 171). Dr. Edmond found that Plaintiff's lumbar spine demonstrated restricted ranges of dorsal flexion, lateral flexion, rotation, and extension. (Tr. 171-174).

Plaintiff had EMGs of his wrists performed on February 22, 2001. (Tr. 186). The EMG showed moderate median mononeuropathy (cubital tunnel syndrome) on the left and mild median mononeuropathy on the right. (Tr. 186). On March 5, 2001, Plaintiff began physical therapy to treat his wrist condition. (Tr. 182). At his initial therapy session, Plaintiff demonstrated decreased range of motion, muscular strength, and muscular endurance in both wrists. (Tr. 182-84). An MRI of Plaintiff's lumbar spine performed on April 30, 2001 showed bilevel disc desiccation and annular rents at L4-5 and L5-S1. (Tr. 388-89). Disc protrusions at these two levels narrowed the left side

of the central canal and the left foramen, though the narrowing at the L4-5 level was more severe. *Id.*

Dr. Lockhart examined Plaintiff on June 6, 2001. (Tr. 411). Plaintiff reported that his low back and shoulder pain, which had improved in early 2001, had again worsened. *Id.* Plaintiff's right shoulder showed moderate to marked clicking when it was passively moved. (Tr. 412). Plaintiff's lumbar spine had marked involuntary muscle guarding in the lumbar paraspinals on both sides. *Id.* Plaintiff had pain and parasthesias bilaterally during sitting and supine straight leg raising tests. *Id.* Plaintiff also had tenderness over the sciatic notches, the right piriformis, and the greater trochanters. *Id.* Dr. Lockhart opined that Plaintiff's back condition limited him substantially. *Id.* In particular, she stated that Plaintiff needed to lie down and change positions as necessary to avoid severe pain, and that his back and shoulder limited his ability to lift, twist, bend, reach overhead, or undergo any sort of repetitive spinal jarring. *Id.* Dr. Lockhart recommended that Plaintiff have another series of trigger point injections for his lumbar, piriformis, and gluteal regions.[1] (Tr. 413).

On August 9, 2001, Richard D. Feldstein, M.D., a psychiatrist, evaluated Plaintiff. (Tr. 397). Dr. Feldstein concluded that Plaintiff suffered from major depressive disorder and a pain disorder. (Tr. 398). On January 30, 2002 Dr. Lockhart examined Plaintiff and noted that, while Plaintiff's back had permanent anatomical changes, Plaintiff was responding well to trigger point injections, had a nearly normal assisted range of motion in the lumbar spine, did not display parasthesia or pain during straight leg raising tests, and had only moderate lumbar paraspinal muscle spasms. (Tr. 420-421).

---

[1] For records of these injections, see Tr. 404, 408, 409.

Dr. Feldstein opined on March 25, 2002 that Plaintiff's back condition required him to lie down to rest his back for an extended period roughly four times a day. (Tr. 457). On April 29, 2002, Plaintiff was again examined by Dr. Lockhart. Plaintiff demonstrated hypermobility in the left sacroiliac joint and burning parasthesias bilaterally during sitting and supine straight leg raising tests. *Id.* Dr. Lockhart opined that Plaintiff needed to lie down periodically during the day to alleviate his back pain. (Tr. 502). On a July 29, 2002 return visit to Dr. Lockhart, Plaintiff exhibited parasthesias during flexion and extension of his lower back and during straight leg raising tests. (Tr. 499). Dr. Lockhart examined Plaintiff again on August 15, 2002. (Tr. 494). In addition to his continuing complains of low back pain, Plaintiff complained of pain and tingling in his neck and right arm. *Id.* On examination, he displayed definite clinical evidence of right lower cervical radiculitis, significant right cubital tunnel syndrome, and bilateral carpal tunnel syndrome. (Tr. 495). Dr. Lockhart re-evaluated Plaintiff on October 23, 2002. (Tr. 490). Dr. Lockhart concluded that Plaintiff's symptoms strongly suggested cervical radiculopathy at the C6 level, and that he suffered from both cubital tunnel syndrome and carpal tunnel syndrome. *Id*. An October 28, 2002 EMG indicated that Plaintiff had mild carpal tunnel syndrome and right cervical nerve root irritation but not frank cervical radiculopathy. (Tr. 488). An MRI of Plaintiff's cervical spine taken on November 16, 2002 indicated that Plaintiff had a foraminal disc protrusion with probable impingement of the right C7 nerve root. (Tr. 484). Dr. Feldstein's treatment notes indicate that Plaintiff was having severe trouble with concentration and focus from March, 2002 through January 2003. (Tr. 454).

Plaintiff continued to complain of back pain despite receiving multiple trigger point injections in late 2002 and early 2003. (Tr. 475-482). On March 27, 2003, Dr. Lockhart concluded

that Plaintiff's degenerative disc disease and spondylosis had progressed substantially, and ordered another MRI of Plaintiff's lumbar spine. (Tr. 477). Dr. Lockhart reviewed a new lumbar MRI and examined Plaintiff again on May 21, 2003. (Tr. 475). The MRI showed progressive degeneration of the lumbar spine, with chronic nerve root compression at the L4-5 and L5-S1 levels. *Id.* Dr. Lockhart opined that this condition resulted in a permanent and significant impairment of body function. *Id.* Dr. Lockhart examined Plaintiff again on August 13, 2003. (Tr. 471). Plaintiff again demonstrated limited range of motion in the lumbar spine, and marked parasthesia during right straight leg raising. *Id.* Dr. Lockhart noted that the April 2003 MRI showed progressive facet arthropathy in Plaintiff's lumbar spine. *Id.*

## **TESTIMONY AT THE HEARING**

At the November 10, 2002 hearing, the ALJ took testimony from the Plaintiff and Michael Rosko, a vocational expert. (Tr. 564). Plaintiff testified that his back pain limited his ability to sit or stand for extended periods of time. (Tr. 571). Plaintiff also testified that he frequently needed to lie down to rest his back. (Tr. 572-73).

The vocational expert testified about the availability of jobs for persons like the Plaintiff. (Tr. 575) He was instructed to testify about the availability of jobs for a person of Plaintiff's age, educational level, and work history who was subject to the functional limitations implied in Plaintiff's testimony. (Tr. 575). The vocational expert testified that the need to lie down periodically during the work day would prevent such a hypothetical person from being able to perform any work, including Plaintiff's past work. (Tr. 576).

The vocational expert was also asked to testify about the availability of work for a person of Plaintiff's age, educational level, and work history who had specific functional limitations. *Id.*

Specifically, the vocational expert was asked to testify about the availability of work for a hypothetical person who could perform only a simple or routine sedentary or sit-down job requiring no more than a few steps to complete low stress tasks, with an option to sit or stand, only limited twisting, bending, turning, or stooping, and no work involving unprotected heights, driving, climbing, hazardous machinery, reaching over chest level with the dominant arm, or constant repetitive use of both hands at the same time. (Tr. 577). The vocational expert testified that several jobs would be available for a person with these limitations. *Id.*

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also

supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## **DISCUSSION AND ANALYSIS**

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1) he was not presently engaged in substantial gainful employment; and

(2) he suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If he cannot, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id*. (citations omitted).

Plaintiff claims that the Commissioner improperly determined Plaintiff's RFC. Specifically, Plaintiff argues that the Commissioner was bound to agree with Dr. Lockhart's conclusion in 2002

that Plaintiff must lie down periodically during the day to alleviate his back pain. The ALJ determined that "treating physicians have consistently indicated limitations regarding prolonged sitting, standing, walking, and bending." (Tr. 21). The ALJ included these functional limitations in Plaintiff's RFC.

Plaintiff's argument that the ALJ was required to conclude that Plaintiff must lie down during the day relies principally on the treating physician rule. The medical opinions and diagnoses of treating physicians are entitled to great weight. *King v. Heckler*, 708 F.2d 1048 (6th Cir. 1983). Indeed "if the opinion is uncontradicted, complete deference . . . must be given to such opinions and diagnoses." *Id.* However, the ALJ is not bound by the conclusory statements of treating physicians where they are unsupported by detailed objective criteria. *Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citing *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986).

Dr. Lockhart's opinion regarding Plaintiff's need to rest his back is not entitled to complete deference under the treating physician rule. Dr. Lockhart's conclusion is little more than a repetition of Plaintiff's complaint that he needs to lie down during the day to alleviate his back pain. It is beyond dispute that Plaintiff's back feels better when he lies flat. The question before the Commissioner was whether Plaintiff's pain is so severe that during any given eight hour period, he *must* lie down intermittently. The record does not contain detailed objective evidence showing that Plaintiff's pain is this severe, or that lying flat for brief periods during the day decreases the pain Plaintiff feels while standing or sitting.

Substantial evidence supports the ALJ's decision to discount Dr. Lockhart's opinion and Plaintiffs own claims that he needs to lie down during the day. In assessing a claimant's credibility,

an ALJ considers a number of factors, including a Plaintiff's daily activities, the intensity and duration of symptoms, and treatment history.  20 C.F.R. § 404.1529(c)(3).  The ALJ properly weighed the various statutory factors before deciding that Plaintiff was not entirely credible.  As the ALJ noted, Dr. Lockhart's treatment notes contain substantial evidence that Plaintiff's back condition is not so severe as to prevent him from working.  On January 30, 2002 Dr. Lockhart noted that Plaintiff was responding well to trigger point injections, had a nearly normal assisted range of motion in the lumbar spine, and had only a moderate muscle spasm. (Tr. 420-421).  During repeated clinical examinations, Plaintiff has shown only occasional parasthesias during straight leg raising and he has consistently good strength in his extremities.[2]  Plaintiff retains almost the full normal range of spinal motion.  Plaintiff has not had surgery or other agressive treatment for his back.  The ALJ also noted the that Plaintiff apparently took a trip to Virginia shortly before the hearing without incident.

There is substantial evidence on the record to support the ALJ's RFC determination.  The ALJ accurately described Plaintiff's RFC before obtaining hypothetical testimony from a vocational expert about the availability of work for someone like Plaintiff.  The ALJ appropriately relied on the vocational expert's testimony to conclude that Plaintiff was not disabled.

## **RECOMMENDATION**

---

[2]The Court notes that the ALJ misstated the content of the record with regard to straight leg raising test.  The ALJ characterized Plaintiff as having "consistently negative" bilateral straight leg raising tests.  The record contains both positive and negative straight leg raising test results at various points.  The record still undermines Plaintiff's credibility because it suggests that Plaintiff's parasthesias are intermittent, while Plaintiff testified that the parasthesias are essentially constant.

Plaintiff's Motion for Summary Judgment should be **DENIED**, and Defendant's Motion for Summary Judgment should be **GRANTED**.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

DATED: May 20, 2005                    s/ Mona K. Majzoub
                                                                  MONA K. MAJZOUB
                                                                  UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

     I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: May 20, 2005                              s/ Lisa C. Bartlett
                                                              Courtroom Deputy